**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

TRACY CORBIN,              §
                                   §
          Plaintiff,       §
                                     §
v.                                      §       CIVIL ACTION NO. H-17-2813
                                     §
SOUTHWEST AIRLINES, INC.,   §
                                     §
          Defendant.    §

**MEMORANDUM AND OPINION**

Tracy Corbin sued her employer, Southwest Airlines, Inc., under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 1301 *et seq.* She asserts claims for: (1) discrimination based on her military status and obligations under 38 U.S.C. § 4311; (2) failure to reemploy her in a nonflying position after she injured her back on military leave under 38 U.S.C. §§ 4312, 4313; (3) denial of employment benefits under 38 U.S.C. § 4316; and (4) denial of pension benefits under 38 U.S.C. § 4318. (Docket Entry No. 23).

After discovery, Southwest moved for summary judgment. Corbin responded and filed additional exhibits, to which Southwest objected, and Corbin responded to those objections. (Docket Entries No. 31, 32, 35, and 37). The court heard oral argument on Southwest's motion for summary judgment and on Southwest's objections to Corbin's evidence. Based on the pleadings; the motions, response and reply; the record; the arguments; and the applicable law, the court grants in part and denies in part Southwest's motion to exclude or strike Corbin's summary judgment evidence and the motion for summary judgment. Specifically, the court strikes or excludes the specified parts of Exhibits 1, 4, 5, 8, 10, 13, 19, and 20, and denies other objections. The court grants summary judgment dismissing Corbin's claims for discrimination, retaliation, and a hostile

work environment, in violation of § 4311; denial of employment and pension benefits during Corbin's first maternity leave, in violation of §§ 4312, 4313; and for failing to restore Corbin's longevity date during the first maternity leave, in violation of § 4318. The following claims and defenses remain to be tried: Corbin's claim under § 4312 and § 4313 for denial of reemployment in a nonflying position during her back-injury treatment in 2007; Corbin's claim under § 4316 and § 4318 for employment and pension benefits accrued during this period; and Southwest's laches defense.

The reasons for these rulings are explained below.

## I.    Background

### 1.    The Maternity Leaves

Tracy Corbin is a veteran of the United States Air Force Reserve. She has worked for Southwest since July 2002, as a first officer flying commercial passenger aircraft. (Docket Entry No. 23 at 2–3). She is a member of the Southwest Airlines Pilots' Association (SWAPA). Corbin's longevity at Southwest started to accrue on July 15, 2002, the date she was hired. The longevity date is used to determine a pilot's rate of pay. (Docket Entry No. 31 at 3 & n.7). It starts at a pilot's date of hire and continues to accrue as long as the pilot is on the Pilot Seniority List and not on an extended unpaid leave of absence. (*Id*.).

From approximately July 10, 2004 to February 14, 2005, Corbin took her first maternity leave. (Docket Entry No. 31 at 3). Under the collective-bargaining agreement then in place, Corbin did not lose seniority while on maternity leave, but her longevity date was taxed—extended—to February 20, 2003, to account for 220 days of unpaid maternity leave. (Docket Entry No. 23 at 2).

Corbin took a second maternity leave from June 24, 2006 to March 1, 2007. (Docket Entry No. 31 Ex. 1 at 126). Southwest approved her request for an extension, and she returned to work

on March 7, 2007.  Again, Corbin did not lose her seniority status, but her longevity date was adjusted, this time from February 20 to October 15, 2003, extended by the 237 days of her maternity leave.[1]  (*Id*. at 128:23-25).

## 2.    Military and Medical Leave

In March 2007, Corbin was on military leave from Southwest discharging her service obligation at the Columbus Air Force Base, in Mississippi.  (Docket Entry No. 23 at 3).  Corbin alleges that Southwest "begrudgingly" granted her military-leave request and that Southwest personnel repeatedly warned her, "You work for Southwest now!"; "Southwest is your primary job, the Air Force Reserve is secondary!"; and "You don't want to drop many trips, work for the Reserve on your days off."  (*Id*.).  She also alleges that SWAPA published a report stating that in a survey of Southwest ex-military pilots, over 77% of them had felt harassed or discriminated against for their participation in the Air Force Reserve or Air National Guard.  (*Id*.).

Corbin alleges that on April 1, 2007, she injured her back while on military leave.  She spent five days in the hospital.  (Docket Entry No. 23 at 3–4).  On April 3, Corbin notified Southwest's chief pilot, Bill Kass, that she had hurt her back and that her military orders had extended her leave to accommodate her medical treatment.  (*Id*.).  Southwest changed Corbin's status from "military leave" to unpaid "medical leave."  (Docket Entry No. 31 at 5).  Under the collective-bargaining agreement, a pilot's longevity date was taxed for medical absences but not for military leave.  (Docket Entry No. 23 at 4).  Corbin's longevity date was extended for her back injury and recuperation.  (*Id*.).

---

[1]  This excluded 13 days of vacation that were not counted for in the adjustment of Corbin's longevity date.

In May 2007, Corbin returned to Houston for medical care. She discharged her ongoing military duties by telecommuting. Air Force doctors placed Corbin on "profile four," which allowed her to do light administrative work, without prolonged sitting or standing or heavy lifting, pulling, or pushing. (Docket Entry No. 23 at 4). Corbin alleges that under profile four, she was not permitted to fly as a cockpit crewmember. (*Id*.). On May 29, a neurosurgeon diagnosed Corbin as 100% disabled through June 12. (Docket Entry No. 31 Ex. 1 at 162:2-8). Another neurosurgeon instructed Corbin to remain off work until July 17. (*Id*. at 161:20–162:7).

Corbin alleges that on May 9, and again on May 17 and 18, she reported her back injury and restrictions to Kass and asked to be reemployed in a nonflying position. (Docket Entry No. 23 at 4–5). Corbin alleges that telephone records prove that she made these requests. (Docket Entry No. 31 Ex. 1 at 151). Southwest ordered Corbin to "provide a doctor's note documenting her inability to fly," and Kass refused her requests for reemployment. (Docket Entry No. 23 at 5). Southwest disputes these allegations and notes that the Pull Sheets, the business records routinely used to track pilots' schedule changes and leave requests, do not include Corbin's alleged reemployment requests in May and June 2007. (Docket Entry No. 31 at 7).

Corbin alleges that she informed her unit leadership of Southwest's refusal to reemploy her in a nonflying position and applied to her Air Force Reserve Unit for incapacitation pay. (Docket Entry No. 23 at 5). Corbin alleges that in response to her request, Kass sent Corbin a letter in July 2007, stating that "[o]ur policy is not to allow our Pilots to return to active status until they are cleared by their Physicians for full work duty without any restrictions." (Docket Entry No. 32, Ex. 2).

Corbin had back surgery in July 2007. She extended her medical leave to January 2008, when she returned to her position as a first officer flying commercial passenger aircraft at Southwest. (Docket Entry No. 31 at 6). Corbin alleges that she had received "threatening phone calls" from Kass during her medical treatment and recuperation, asking why she was "well enough to be in home" but "not well enough to come back to the cockpit." (Docket Entry No. 23 at 5). Southwest's Pull Sheets show that, in December 2007, Corbin asked to extend her leave and for reemployment in an administrative position. (*Id.*). Corbin alleges that she believed that if she did not return to Southwest soon, her employment would likely be terminated. (*Id.* at 6). When Corbin returned to Southwest, she learned that her longevity date had been moved from October 15, 2003, to June 28, 2004, extending it 257 days because of her military leave. (*Id.*).

### 3.     The Disputes Over Corbin's Longevity Date

In September 2010, SWAPA and Southwest signed a "Side Letter 3: Longevity Accrual While on Maternity Leave," revising the collective-bargaining agreement to allow pilots on maternity leave to keep the same longevity date without having it taxed for the time spent on maternity leave. (Docket Entry No. 31 at 5).

In January 2017, Corbin learned that Southwest did not tax the longevity date of another female pilot who had taken maternity leave in 2004, around the same time Corbin did. (*Id.* at 6–7). Corbin alleges that she believed the difference in treatment was because the other woman was not a military pilot and "had never taken any military leave from Southwest." (*Id.*). Corbin complained to her chief pilot in 2017, right after she learned of the different treatment.

In early February 2017, Corbin contested the extension of her longevity date by the length of both her maternity and medical leaves of absence. Corbin and Southwest participated in a

mediation, during which Southwest acknowledged that it had made a mistake in taxing Corbin's longevity date and promised to "make Corbin whole." (Docket Entry No. 32 Ex. 11 at 24:6-9). Southwest agreed to move back Corbin's longevity date for her 2006 maternity leave and her 2007 military leave, from June 28, 2004 to February 20, 2003. (Docket Entry No. 23 at 8). Southwest rejected Corbin's request to set the longevity date back to February 13, 2003. (*Id.*).

### 4. Corbin's 2014 Grievance

On January 4, 2014, Corbin flew the Houston-to-Dallas route at 10:00 p.m. (Docket Entry No. 23 at 14). The hour-long flight was the only one Southwest scheduled Corbin to do that day. (Docket Entry No. 32, Ex. 1 at 188–89). Mark Williams was the captain for the flight, Corbin was the first officer, and Barry Dowell, a newly hired employee, was in the jump seat. (*Id.*). Dowell was also a military pilot. During the flight, Corbin encouraged Dowell to "hang on" to his job with Southwest and with the military, because "Southwest [does not] mind if you drop a trip a month." (*Id.*). After landing in Dallas, Southwest assigned Corbin to fly another leg, from Dallas to Amarillo, at 11:00 p.m. (Docket Entry No. 32, Ex. 1 at 192–93). Corbin refused, explaining that she was fatigued. Her refusal caused Southwest to cancel the flight, requiring seven unaccompanied minors to stay at the airport overnight. (*Id.*). Corbin denies knowing this when she refused the assignment.

The next day, Rick Carasco, an assistant chief pilot, asked Corbin to come to a meeting. Corbin's union representative also attended. (*Id.* at 195). Corbin alleges that the meeting focused on her conversation with Dowell on the flight. She alleges that Carasco accused her of "telling the military member how to work the system." (*Id.*). Carasco also discussed Corbin's refusal to fly the added leg, stating that those on the first flight reported that Corbin was not too fatigued to fly, but

simply did not want to. (Docket Entry No. 32, Ex. 18). Corbin alleges that the meeting was held because of her advice to Dowell, but Corbin admitted that she was not penalized for that conversation or for refusing to fly the additional leg. (Docket Entry No. 32, Ex. 1 at 195).

Corbin sued Southwest under the USERRA, 38 U.S.C. § 4301 *et seq.* She alleged that Southwest: (1) discriminated against her because of her military-pilot status, in violation of § 4311; (2) improperly denied her reemployment in an administrative position, in violation of § 4312 and § 4313; (3) improperly denied her seniority and benefits during her military leaves, in violation of § 4316; and (4) improperly denied her pension benefits during her 2007 military leave, in violation of § 4318. Corbin sought actual and exemplary damages, arguing that Southwest violated her USERRA rights willfully and intentionally. 38 U.S.C. § 4323(d); 20 C.F.R. § 1002.312(c).

After discovery, Southwest moved for summary judgment on three grounds: (1) laches bars Corbin's claims; (2) Corbin cannot make a *prima facie* showing of discrimination or retaliation under USERRA; and (3) Southwest had legitimate reasons for its challenged employment actions. (Docket Entry No. 31 at 2). Each ground is analyzed below.

## II.     The Legal Standard for Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"

*Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### III.    Southwest's Motion to Strike or Exclude Certain Summary Judgment Evidence

### A.    The Legal Standard

Under Rule 56, the facts set out to support or oppose a summary judgment motion must be admissible in evidence. FED. R. EVID. 56(c)(4). "In the Fifth Circuit, it is well settled that 'the admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial.'" *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 823 (S.D. Tex. 2009) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004)). In the absence of competent summary judgment proof, the court will not assume that the moving party could or would prove the necessary facts. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391–92 (5th Cir. 2009) (citing *Liquid Air Corp.*, 37 F.3d at 1075). A court may not consider hearsay or unauthenticated documents. *Johnson v. Spohn*, 334 F. App'x. 673, 677–78 (5th Cir. 2009); *Martin v. John W. Stone Oil Distrib. Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Neither legal conclusions nor statements made without personal knowledge are admissible. *See* FED. R. EVID. 602, 701, 702.

At the summary judgment stage, evidence need not be presented in admissible form if it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citing *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)). "A district court may rely upon affidavits in the summary judgment context where the affiants' 'personal knowledge and competence to testify

are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *Lohn*, 652 F. Supp. at 824 (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)); FED. R. CIV. P 56(e). The Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence. . . . It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (quoting *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993)); FED. R. EVID. 901(a).

Corbin attached 20 exhibits to her response to Southwest's summary judgment motion. Southwest moves to exclude the exhibits as either not authenticated or as hearsay. Corbin argues that these documents are authenticated under Rule 901(b)(4). She did not file an affidavit or declaration to authenticate these documents.

## B. Analysis

### 1. Uncited Statements and Arguments of Counsel

Southwest asks the court to exclude unsupported statements in Corbin's response to the summary judgment motion as counsel argument or unwarranted assumption. Southwest pointed to examples of these unsupported allegations:

- ". . . Mrs. Hulen['s] . . . chief pilot finally decided that she was showing more loyalty to her new family than she was to her company, so it was at this point that the chief pilot exercised his nearly unbridled discretion and charged Mrs. Hulen's longevity for the extra 90 days of leave." Plf.'s Opp. at p.10.

- "If [Corbin] had been reemployed in a non-flying position described in her claims, then her award under Side Letter 3 would have been considerably larger than the actual amount received, perhaps even exceeding the $ 20,000 difference between her award and some other pilots." Plf.'s Opp. at p. 13.

- "[Corbin] was not terminated, but she was placed in fear of termination, and while she was not directly denied a promotion, it was clear to her after this experience that there was no

reason for her to submit her name for any future management opportunities such as check airman." Plf.'s Opp. at p. 16.

(Docket Entry No. 35 at 3). Southwest argues that the court cannot consider these statements because they are counsel's arguments not supported by citation to summary judgment evidence, not sworn to, not based on personal knowledge, and not in proper form. (*Id.* at 3–4). Corbin asserts that these statements merely describe "logical inferences" she wants the court to draw from the "facts contained in the evidentiary record." (Docket Entry No. 37 at 2).

"Merely conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment." *Durrett v. Nationwide Prop. & Cas. Ins. Co.*, No. A-14-CA-167-SS, 2015 WL 1564783, at *7 (W.D. Tex. Apr. 7, 2015) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003); *Liquid Air Corp.,* 37 F.3d at 1075*; see also Pittman v. Gen. Nutrition Corp.,* 515 F. Supp. 2d 721, 739 & n.76 (S.D. Tex. 2007). Corbin's response contains many assertions similar to those Southwest has identified. They are conclusory, without support by affidavit or citation to competent summary judgment evidence in the record. *See* Fed. R. Civ. P. 56(c)(1) (a party must support assertions that a fact exists by "citing to particular parts of materials in the record"); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). The motion to exclude or strike these statements is granted.

### 2.    Uncited Deposition Testimony of Corbin and Stephen Stilwell

Southwest also asks the court to exclude or strike parts of the deposition testimony by Corbin and her witness, Stephen Stilwell, that Corbin did not cite in her summary judgment responses. (Docket Entry No. 35 at 4). Stilwell was a first officer at Southwest and was a committee chair for

SWAPA. Stilwell's testimony focused on his role as Corbin's union representative in her disputes with Southwest.

Southwest argues that under Rule 56(c)(1) and (3), the court is not obligated to search the record for uncited evidence supporting Corbin's opposition to the summary judgment motion. *See* FED. R. CIV. P. 56(c)(1) ("A party . . . must support the assertion by citing to particular parts of materials in the record."); FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials. . . ."); *see also Porter v. Exxon Mobil Corp.*, No. C H-14-1553, 2016 WL 6190301, at *2 (S.D. Tex. Oct. 24, 2016), *appeal dismissed*, 705 F. App'x 300 (5th Cir. 2017), *reh'g denied*, (Jan. 2, 2018); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Pita Santos v. Evergreen Alliance Golf Ltd., LP*, 650 F. Supp. 2d 604 (S.D. Tex. 2009); *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.").

Even though courts are not obligated to search for uncited information in the record, they are not barred from doing so. "In reviewing a motion for summary judgment, '[t]he court *need* consider only the cited materials, but it *may* consider other materials in the record.'" *Paske v. Fitzgerald*, CIV.A. H-12-2915, 2014 WL 1366552, at *4 (S.D. Tex. Apr. 7, 2014), *aff'd*, 785 F.3d 977 (5th Cir. 2015) (emphasis added) (quoting FED. R. CIV. P. 56(c)(3)); *see also* FED. R. CIV. P. 56(c)(3) comm. note ("[T]he court may decide a motion for summary judgment without undertaking an independent search for the record. Nonetheless, the rule also recognizes that a court may consider record materials not called to its attention by the parties."). While the court need not consider uncited evidence, it need not strike it if it is in the record, authenticated, and admissible. *Everett Fin., Inc.*

*v. Primary Residential Mortg., Inc.*, No. 3:14-cv-1028-D, 2016 WL 7378937, at *7 (N.D. Tex. Dec. 20, 2016) (overruling motion to strike uncited parts of the plaintiffs' exhibits). Southwest's motion to exclude or strike Corbin's evidence in the record that is not cited in her briefs or responses is denied.

### 3. Exhibit 3 and the Event Request Form

Southwest asks the court to exclude the "Event Request Form" and emails attached to Exhibit 3 of Corbin's response. (Docket Entry No. 32, Ex. 3 at 116–22). Union representatives used Event Request Forms to report meetings with Southwest management at which the representatives appeared on behalf of union members. (Docket Entry No. 37 at 5). The Event Request Form at issue purportedly recorded the SWAPA Military Affairs teleconference on Corbin's grievance with Southwest on February 10, 2017. The Form indicates that Southwest apologized to Corbin for improperly extending her longevity dates during her maternity and military leaves of absence, stated that "alternative employment should have been offered to her," and promised to "ensure that this wrong is corrected." (*Id*. at 118). Two emails from Stilwell are also attached, showing the follow-up steps he took to correct Corbin's longevity date. (*Id.* at 121–22).

Southwest asks the court to exclude the Form and emails as not properly authenticated and as hearsay. (Docket Entry No. 35 at 5). Southwest argues that Corbin cannot identify who filled out the Form and argues that there is no showing that it reviewed or approved the Form's content. (*Id.*). Corbin points to Stilwell's deposition testimony identifying the Event Request Form and the related emails and describing their content. (Docket Entry No. 32, Ex. 3 at 70:2–71:80, 72:16–73:19).

Rule 901(a) requires authentication by "evidence sufficient to support a finding that the matter in question is what its proponent claims," FED. R. EVID. 901(a), which an affidavit, declaration, or deposition can provide. *Keller v. Coastal Bend College*, 629 F. App'x. 596, 599–600 (5th Cir. 2015). Stilwell testified in his deposition that while he did not personally type the Event Request Form and did not remember who wrote it, it was composed and typed "at the time or shortly after the [conference] was concluded" and was "a correct summary of what happened." (Docket Entry No. 32, Ex. 3 at 70:20–71:8). Rule 803(6) makes hearsay statements admissible if the records are: (1) kept pursuant to a routine procedure designed to assure their accuracy; (2) created for motives that would tend to assure accuracy; and (3) not themselves mere accumulations of hearsay or uninformed opinion. *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, No. H-08-2336, 2011 WL 12896736, at *7 (S.D. Tex. Aug. 22, 2011) (citing *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980)). "Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records." *Rosenberg*, 624 F.2d at 665.

Stilwell testified that the Form was completed for each meeting when a union representative was present; Exhibit 3 was completed at the time of or shortly after his meeting with Southwest and Corbin; and that the Form accurately summarized the meeting. (Docket Entry No. 32 Ex. 3 at 70:4-24). Stilwell need not have personally prepared the Form to establish its admissibility. His deposition testimony was adequate to admit Exhibit 3 and related emails under Rule 803(6).

### 4. Exhibit 17

Exhibit 17 is a timeline Corbin and her counsel prepared of her employment and disputes with Southwest from July 2002 to June 2017. (Docket Entry No. 32, Ex. 17). Corbin alleges that Exhibit 17 combines the responses to interrogatories, requests for admissions, and the Initial Discovery Protocols. (Docket Entry No. 37 at 12). This Exhibit is a demonstrative summary and is not proof of any facts. It is not excluded or stricken, but it is considered for only its limited purpose.

### 5.  Exhibits 1, 4–6, 8, 10, 13–15, 18, and 20

Southwest moves to exclude or strike other exhibits for insufficient foundation and as hearsay. FED. R. EVID. 802, 901(b).

Southwest objects to Exhibits 1, 5, and 8 because they are from the internet and lack proper authentication. FED. R. EVID. 801, 802, 901. (Docket Entry No. 35 at 8). These exhibits contain: Southwest's incapacitation-pay application procedures, (Docket Entry No. 32, Ex. 1); an introductory description of Southwest's annual Chief Pilot Conference for 2017, (*Id.* Ex. 5); and a passage entitled "Military Update" from the SWAPA Military Committee, written by Steve Stilwell, (*Id.* Ex. 8). Corbin contends that Southwest and SWAPA prepared and distributed these documents to Southwest employees. (Docket Entry No. 37 at 14). She argues that they are properly authenticated under Rule 901(b)(4) based on their "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." FED. R. EVID. 901(b)(4).

"In the case of an exhibit purported to represent an electronic source, such as a website or chat logs, testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate." *Thompson v. Bank of Am. Nat. Ass'n*, 783

F.3d 1022, 1027 (5th Cir. 2015). Corbin did not provide evidence that could authenticate the sources of these downloaded documents. These documents are not self-authenticating by appearance or content. Exhibits 1, 5, and 8 are excluded from the summary judgment evidence.

Exhibit 4 contains two emails from Michael Gibbons to Corbin dated May 10 and May 11, 2007. (Docket Entry No. 32, Ex. 4). Corbin contends that they were "produced during the discovery process as answers to interrogatories, admissions, and court ordered Initial Discovery Protocol," with identifying labels. (Docket Entry No. 37 at 7). Emails and other electronic records are authenticated under Federal Rule of Evidence 901(b)(4) when they indicate the sender, recipient, and date and time of transmission. *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 535 & n.5 (N.D. Tex. 2018); FED. R. EVID. 901(b)(4). Here, the emails include the sender's name, the recipient, the date, and the subject. They are sufficiently authenticated.

Southwest also objects to Exhibit 4 as hearsay. (Docket Entry No. 35 at 6). Corbin did not respond to this objection. Documents are not admissible under Rule 803(6) simply because they concern a business matter. *See, e.g.*, *United States v. Robinson*, 700 F.2d 205, 209–10 (5th Cir.1983); *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir.1988). A party seeking to introduce an employee's email about a business matter under Rule 803(6) must show that it was written, sent, and maintained under a business duty the employer imposed. *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. H-06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008). The record does not provide this predicate or show a basis for an another exception. Corbin does not allege that Michael Gibbons, who had personal knowledge of the emails, would be able to testify at the trial. Exhibit 4 is excluded.

Exhibit 6, a "Fatigue Risk Management Commitment Letter," bears the Southwest logo in the letterhead and the signature of Southwest's Executive Vice-President and Chief Operating Officer. These, plus the revision date, authenticate the letter. *See Holmes*, 304 F. Supp. 3d at 535 & n.5. Exhibit 6 is admissible.

Exhibit 10 is a screenshot of text messages Corbin asserts she exchanged with Southwest pilot John Freed. (Docket Entry No. 37 at 8). The screen shot has five text messages with the name "John Freed." The exhibit does not show that the text messages were sent to or from Corbin. Exhibit 10 does not satisfy Rule 901(a) and is excluded. FED. R. EVID. 901.

Exhibits 13 and 20 are allegedly excerpts from Southwest's internal documents and employee handbook. (Docket Entry No. 37 at 8). The documents contain no title, letterhead, or other source indicia. Exhibits 13 and 20 are excluded.

Exhibits 14 and 15 are allegedly Southwest internal documents, including a Letter of Counsel from Carasco and grievance forms from Corbin describing her disputes with Southwest. The letter and grievance forms have Southwest's logo in the letterhead, the names of the senders and recipients, the dates, and document numbers. They are admitted. FED. R. EVID. 901(b)(4).

Exhibits 18 contains "Fatigue Call Notes" Corbin prepared as a summary of the 2014 "fatigue call" event. (Docket Entry No. 37 at 10). This summary of otherwise admitted evidence is demonstrative only, and is not a proof of the summarized facts. *Whitfield*, 590 F.3d at 365. Exhibit 18 is not excluded but will be considered only for its limited purpose.

### 6. Exhibit 16

Exhibit 16 is a list of current employees who Corbin alleges have been working for Southwest since 2007. (Docket Entry No. 32 Ex. 16). Southwest argues that these documents are

"self-serving witness identifications and assumptions" that "lack authentication, contain inadmissible hearsay, and rely heavily on unsupported assumptions and speculations." (Docket Entry No. 35 at 7).

Supplemental Exhibit 16 contains a screenshot for the Southwest website with the employees' profiles. (Docket Entries No. 37, Ex. 3; No. 32, Ex. 16a). It is part of Corbin's response to Southwest's initial disclosure request. Corbin filed a replacement for this exhibit that redacted the employees' personal information. (Docket Entry No. 38). The redacted exhibit includes the website from which the employees' profiles were downloaded, and it provides the employees' names, job titles, and their contact information. Corbin alleges that these current employees also worked for Southwest when she took her 2007 military leave and that they know the facts relating to that leave. (Docket Entries No. 37 at 11–12; No. 32, Ex. 16). She wants to use this evidence to rebut Southwest's laches defense by showing that her delay in filing the lawsuit does not prejudice Southwest by depriving it of witnesses. (*Id.*). Exhibit 16 is admissible for this purpose.

### 7. Exhibit 19

Southwest objects to Exhibit 19 as irrelevant. (Docket Entry No. 35 at 7). Exhibit 19 includes two emails of Southwest's "eKick Tail," which recognized Corbin's performance in a post-2017 flight.

Evidence is relevant if "it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Corbin argues that Exhibit 19 is relevant to show her work ethic and could help to rebut Southwest's assertion that Corbin refused to fly the additional leg in January 2014 simply because she did not want to fly.

Corbin's 2017 work performance has little relevance to why she refused to do a leg in 2014. Exhibit 19 is excluded.

## IV.    The Laches Affirmative Defense

### A.    The Legal Standard

Southwest argues that Corbin's claims are "over a decade old." They arise from: (1) her first maternity leave, 13 years earlier; (2) her second maternity leave, 12 years earlier; (3) her alleged request for reemployment and military leave, 10 years earlier; and (4) her claim to employment benefits from 6 to 16 years earlier. (Docket Entry No. 31 at 9). Southwest asks the court to apply laches to bar Corbin's claims dating from 2007 or earlier. Southwest does not ask the court to apply laches to Corbin's claim arising from her 2014 fatigue call.

USERRA does not have a statute of limitations. Section 4322(c)(6) of USERRA originally provided that "no *State* statute of limitations would apply to any proceeding under [this chapter]." 48 U.S.C. § 4322(c) (1998); S. Rep. 103-158 (1993) (emphasis added). USERRA did not refer to the federal statute of limitations under 28 U.S.C. § 1658. In 2008, Congress amended USERRA to make it clear that there is no state or federal statute of limitations for USERRA claims:

> Inapplicability of statutes of limitations. If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter [38 U.S.C. §§ 4301 *et seq.*] alleging a violation of this chapter, there shall *be no limit on the period for filing* the complaint or claim.

38 U.S.C. § 4327(b) (emphasis added). Some circuits have applied the default four-year statute of limitations under 28 U.S.C. § 1658 to pre-2008 USERRA claims, reasoning that the 2008 amendment "changed" the original § 4322(c)(6), rather than merely "clarifying" it. *Middleton v. City of Chicago*, 578 F.3d 655, 665 (7th Cir. 2009); *Dean v. City of New Orleans*, 544 F. App'x.

353, 355 (5th Cir. 2013) (citing *Middleton*, 578 F.3d at 665); *Baldwin v. City of Greensboro*, 714 F.3d 828, 839 (4th Cir. 2013) (same).

In *Rogers v. City of San Antonio*, 392 F.3d 758 (5th Cir. 2004), a pre-2008 case, the Fifth Circuit held that laches did not bar the plaintiff's USERRA claims absent evidence showing that the delay prejudiced the defendant.[2] *Id.* at 773. But the Fifth Circuit has not yet addressed the 2008 amendment's affect on a laches defense. In *Sumrall v. Ensco Offshore Co.*, 2:17-cv-48-KS-MTP, 2018 WL 2088761 (S.D. Miss. May 7, 2018), the Southern District of Mississippi held that laches applied to a plaintiff's USERRA claims. *Id.* at *8. Other courts addressing the issue also applied laches to belated post-2008 USERRA claims. *See, e.g.*, *Mock v. City of Rome*, 851 F. Supp. 2d 428, 436 (N.D.N.Y. 2012); *Potts v. Howard Univ. Hosp.*, 58 F. Supp. 2d 36, 39–40 & n.4 (D.D.C. 2009) (applying laches to bar plaintiff's USERRA claims); *Seiler v. Hollidaysburg Am. Legion Ambulance Serv., Inc.*, No. 3:10-cv-41, 2011 WL 4017965, at *8 (W.D. Pa. Sept. 8, 2011) (analyzing laches in post-2008 USERRA claims, but finding that the defendant was not prejudiced).

The Merit Systems Protection Board (MSPB), an Appeals Board reviewing employees' USERRA claims against the federal government, has applied laches to post-2008 USERRA claims. *Johnson v. U.S. Postal Serv.*, 121 M.S.P.R. 101, ¶ 6 (2014) ("The equitable defense of laches bars an action when an unreasonable delay in bringing the action has prejudiced the party against whom the action is taken."); *Pueschel v. Dep't of Transp.*, 113 M.S.P.R. 422, ¶ 6 (2010); *Andrews, Forrest v. Dep't of the Treasury*, PH-4324-15-0492-I-2, 2017 WL 4367360 (N.J. Bd. Tax Sept. 28, 2017). The Fifth Circuit has found MSPB's interpretation of USERRA to be persuasive. *Carder v. Cont'l Airlines, Inc.*, 636 F. 3d 172, 176 & n.3 (5th Cir. 2011) ("Because Appellants have not

---

[2]  In *Rogers*, the plaintiffs limited their claims for damages to the four-year period before the filing of their suits in the district court. The only alleged prejudice shown by the defendant is that one witness left the company.

argued for a higher level of deference or directed us to any authority suggesting that Congress delegated authority to the MSPB to interpret USERRA through decisions having 'the force of law' . . . we defer to [MSPB's decision] based only on that decision's 'power to persuade.'") (citing *United States v Mead Corp.*, 533 U.S. 218, 231–32 (2001)). While the four-year statute of limitation does not bar Corbin's claims, laches may if the delay will prejudice Southwest.

### B. Analysis

Laches protects defendants against "unreasonable, prejudicial delay in commencing suit." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 960 (2017). A defendant must show that: (1) the plaintiff inexcusably delayed asserting a right; and (2) the delay caused the defendant undue prejudice. *Rogers*, 392 F.3d at 773; *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 256 (5th Cir. 2016).

"Delay is measured beginning when a claimant 'knew or should have known' of the alleged violation or injury." *RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 709 (S.D. Tex. 2009) (citing *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982)). "Unlike statutes of limitations, 'laches is not . . . a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.'" *Thorne v. Union Pac. Corp.*, 290 F. Supp. 3d 635, 645 (W.D. Tex. 2017) (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 396 (1946)).

To show prejudice, the defendant must show that it changed its position because of the delay. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) (an employer was not unduly prejudiced by the cost of defending Veterans' Reemployment Rights Act suit now instead of earlier); *Novak v. Mackintosh*, 937 F. Supp. 873, 880 (D.S.D. 1996) (no prejudice in [Veterans' Reemployment Rights Act] claim where there was no evidence that the employer

changed its position in a way that would have occurred if there had been no delay). Summary judgment must be denied if there is a genuine factual dispute material to deciding whether the plaintiff's delayed filing caused the defendant undue prejudice. *Abraham v. Alpha Chi Omega*, 796 F. Supp. 2d 837, 854–55 (N.D. Tex. 2011).

### 1. Inexcusable Delay

#### a. The Claims Related to Pension Benefits

Corbin argues that her claims for lost pension benefits will not start to run until she retires from Southwest. (Docket Entry No. 32 at 18). Corbin relies on *Lenoard v. United Airlines, Inc.*, 972 F.2d 155 (7th Cir. 1992). The Seventh Circuit discussed the statute of limitations and laches for an employee's claims for lost pension benefits under the Veterans' Reemployment Rights Act. *Id*. at 157–58. The court held that limitations did not start to run until after the employee retired. The court summarized circuit court decisions on this issue and noted that "[t]hre is overwhelming authority for the proposition that a Veterans' Act claim for lost pension benefits does not accrue until the benefits vest at retirement," and that "the [accrue-at-retirement] rule applies whether or not a veteran knows in advance that [the] claimed pension benefits will not be paid." *Id*. at 158.

In an earlier decision from the Northern District of Alabama, the district court held that applicable limitations period did not begin to run on an employee's pension claim until his retirement or until each pension installment was due. *Alabama Power Co. v. Davis*, 383 F. Supp. 880 (N.D. Ala. 1974), *aff'd per curiam*, 542 F. 2d 650 (5th Cir. 1976), *aff'd* on other grounds, 431 U.S. 581 (1977). In the Fifth Circuit's most recent case addressing this issue, the court discussed *Davis* but refused to apply it to employment discrimination claims. *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 694 (5th Cir. 1982).

Congress adopted USERRA in 1994 to clarify the Veterans' Reemployment Rights Act, and "the large body of case law that had developed under [Veterans' Reemployment Rights Act] remained in full force and effect, to the extent it is consistent with USERRA." *Rogers*, 392 F.3d at 762. Under the Seventh Circuit case and *Davis*, the time limits on Corbin's pension-benefits-related claims would start to run when she retires from Southwest. Corbin's case, however, is different from most of the cited cases because at the time Corbin sued Southwest for pension benefits, she was still an employee of the company. The parties did not dispute that Corbin has a cause of action to sue Southwest for pension benefits while she is still employed. This court need not resolve this issue here. Assuming that Corbin's pension-benefit claims are subject to a laches defense, there are genuine factual disputes material to determining whether Southwest was unduly prejudiced by Corbin's delay in asserting these claims.

### b. The Claims Unrelated to Pension Benefits

Corbin's claims unrelated to her pension or retirement benefits include: discriminatory denial of benefits during her maternity leave; denial of reemployment rights; and denial of seniority and benefits during her military leaves. Southwest asserted laches as to each of these claims. The delay is measured from when Corbin "knew or should have known" of Southwest's alleged wrongdoing. *RE/MAX Intern.*, 655 F. Supp. 2d at 709. Corbin testified that she did not learn until 2017 that another female pilot did not have her longevity date taxed during that pilot's pre-2006 maternity leave. The record does not support an inference that Corbin knew of the alleged discriminatory treatment at an earlier date. Corbin did not unduly delay in bringing her claim of discriminatory denial of benefits during her maternity leave. 38 U.S.C. § 4311.

Corbin testified that she made multiple reemployment requests in 2007, and that Southwest denied them. She knew that she did not get seniority and other benefits during her military leaves during and before 2007, but she waited 10 years to file these claims. 38 U.S.C. §§ 4312–13, 4316. The evidence showed that Southwest has long posted notices of employees' rights and benefits under 38 U.S.C. § 4334. (Docket Entry No. 31 at 12–13). The record shows that Corbin was aware of her USERRA claims in 2007, and that she continuously questioned her "medical leave" status. Corbin alleges that she asked for, and was denied, reemployment in a nonflying position on different occasions in May and June 2007. Southwest contends that nothing justifies Corbin's 10-year delay in suing for benefits lost during her military leave of absence and for the denial of her reemployment requests.

### c. Corbin's Reasons for the Late Filing

Corbin alleges that Southwest deliberately concealed the information that "USERRA supersedes contracts, agreements, policies and practices that limit or eliminate any right or benefit under USERRA." (*Id.* at 9). But ignorance of one's legal rights does not excuse a failure to sue. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (citing *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)); *see also United States v. Castillo*, No. 2:13-cv-852, 2018 WL 2335728, at *2 (S.D. Tex. May 22, 2018). This principle applies to ignorance of the procedures of law by which a more favorable doctrine of substantive law can be sought. *Harris v. Lykes Bros. S. S. Co., Inc.*, 375 F. Supp. 1155, 1158 (E.D. Tex. 1974) (citing *Marrero Morales v. Bull Steamship Co.*, 279 F.2d 299 (1st Cir. 1960)).

Corbin also alleges that Southwest made misrepresentation to her by stating that the calculation on her longevity date was correct. Corbin does not cite record evidence to support this

allegation. Nor does she cite case law showing that conclusory statement like this is sufficient to prevent laches' application. Corbin unreasonably delayed filing these claims.

### 2. Undue Prejudice

Southwest argues that it is unduly prejudiced by Corbin's delay because important witnesses are no longer available. They have left Southwest, cannot be located, or have impaired memories and recall of the events. (Docket Entry No. 31 at 13–14). "Undue prejudice may be 'either economic (e.g., loss of monetary investments, incurring damages that might otherwise have been avoided by an earlier suit) or evidentiary, i.e., preventing the defendant from presenting a full and fair defense on the merits (e.g., loss of records, death of a witness, deteriorating memories of past events).'" *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 712 (W.D. Tex. 2013) (quoting *Altech Controls Corp. v. EIL Instruments, Inc.,* 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998)). The Fifth Circuit has required a showing that specific witnesses are unavailable, not merely that they are no longer employees. *Sumrall*, 2:17-CV-48-KS-MTP, at *8 (citing *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir. 1979)). Southwest has not met this burden. Corbin testified that she asked her then-chief pilot, Kass, for reemployment in a nonflying position. Kass is currently on a long-term medical leave from Southwest and is not expected to resume his employment with the company. Monty Sparks testified in his deposition that Kass suffered traumatic brain injuries resulting in memory loss, but the extent is unclear. (Docket Entry No. 31, Ex. 17 at ¶ 13). Some witnesses who changed Corbin's longevity date are no longer employed by Southwest, and their memories have been affected by the years that have elapsed. (Docket Entry No. 31 at 15). Southwest also contends that documents for disciplinary actions or performance reviews for Corbin dated two years before the lawsuit were removed from the record. (*Id.*).

Corbin responds that Southwest retains records and documents for the events at dispute. She also provides a list of current employees of Southwest who were also employees in 2007 and have knowledge of Corbin's military leave requests. (Docket Entry No. 32 at 19–20). For example, Corbin listed Mike Penn, who made the entries for Corbin's military pull sheet in 2007; Pilar Perez, who prepared a letter from Kass explaining Southwest's reemployment policy to Corbin; and Michael Zajchowski, who documented Corbin's military leave in 2007. (Docket Entry No. 32, Ex. 16). Both Southwest and Corbin provided records of Corbin's maternity and military leave dates, her seniority and benefits status, doctors' letters about her back injury, and the SWAPA Form stating that Southwest incorrectly taxed Corbin's longevity date.

The record shows factual disputes material to deciding whether Southwest is unfairly prejudiced by Corbin's delay in filing the suit. Southwest's summary judgment motion on laches is denied on the present record.

## V. The Discrimination Claims

Corbin alleges that Southwest discriminatorily denied her "employment and benefits" by improperly taxing her longevity date for her two maternity leaves, and that Southwest created a hostile work environment in retaliation for the absences she took to discharge her military obligations. (*Id.* at 12). Southwest moves for summary judgment, arguing that Corbin cannot establish a *prima facie* case of discrimination under USERRA and that Southwest had a legitimate nondiscriminatory basis for its employment decisions. (Docket Entry No. 31 at 17–24).

USERRA has three purposes: "(1) to encourage noncareer service in the uniformed services by reducing employment disadvantages; (2) to minimize the disruption to the lives of persons performing military service, their employers and others by providing for the prompt reemployment

of such person upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services." *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 544–45 (5th Cir. 2013); 38 U.S.C. § 4301(a). Section 4311 provides that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, . . . or any benefit of employment" because of the person's military service. 38 U.S.C. § 4311(a). An employer violates this provision if "the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services" is a "*motivating factor* in the employer's action." 38 U.S.C. § 4311(c) (emphasis added). "The statute should be liberally construed for the benefit of the military reservists and guardsmen." *Mayeaux v. Hous. Indep. Sch. Dist.*, 986 F. Supp. 2d 842, 847 (S.D. Tex. 2014) (citing *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980)); *Cole v. Swint*, 961 F.2d 58, 59 (5th Cir. 1992). But § 4311 does not prohibit labor contracts that treat employees on military leave equally with employees on nonmilitary leaves. *Rogers*, 392 F.3d at 768.

A plaintiff bears the initial burden of showing by a preponderance of the evidence that her military service was a substantial or motivating factor in the employer's adverse employment action. *Bradberry*, 732 F.3d at 545 (citing *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)); *Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338, 342–43 (N.D. Tex. 2004); 20 C.F.R. § 1002.22. A "motivating factor" means that the employer, in taking the action against the employee, "relied upon, took into account, considered, or conditioned its decision on [the employee's] military-related [status or obligation]." *Snowman*, 347 F. Supp. 2d at 343 (quoting *Robinson v. Morris Moore Chevrolet–Buick, Inc.*, 974 F. Supp. 571, 576 (E.D. Tex. 1997)). "By referring to a 'motivating factor,' the [USERRA] does not textually suggest that military service be

the *sole* factor." *Bradberry*, 732 F.3d at 545; *Mayeaux v.*, 986 F. Supp. 2d at 847; *Wright v. City of Horn Lack, Miss.*, 63 F. Supp. 3d 651, 655–56 (N.D. Miss. 2014). A reasonable factfinder may determine that a plaintiff's military service is a "motivating factor" for: (1) the employer's adverse employment action based on an inference from the employer's discriminatory remark, *Mayeaux v.*, 986 F. Supp. 2d at 849–50; (2) the employer's inconsistent and shifting explanations for the employment action, *Martin v. J.A.M. Distrib. Co.,* 674 F. Supp. 2d 822, 842 (E.D. Tex. 2009); (3) the fact that the employer issued adverse actions against an employee immediately after her return from the military service, *Wright v. City of Horn Lake, Miss.*, 63 F. Supp. 3d 651, 656 (N.D. Miss. 2014); or (4) different treatment of similarly situated employees, *Savage v. Fed. Express Corp.*, 856 F.3d 440, 451 (6th Cir. 2017). A plaintiff's subjective inference, without proof from which an inference might be drawn, is not enough to survive summary judgment. *Carder*, 2014 WL 1356094, at *3.

If the plaintiff meets this burden to show the motivating factor, "the employer then has the opportunity to come forward with evidence to show . . . that the employer would have taken the adverse action anyway, for a valid reason." *Bennett v. Dall. Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 787 (N.D. Tex. 2013) (quoting *Snowman*, 347 F. Supp. 2d at 342; *Sheehan*, 240 F.3d at 1013); 38 U.S.C. § 4311(c)(1). "[I]n contrast with Title VII cases . . . in which the burden remains on the plaintiff to show pretext, in USERRA cases 'the burden [is] on the employer to show lack of pretext.'" *Mayeaux*, 986 F. Supp. 2d at 848 (quoting *Velázquez–García v. Hous. Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16 (1st Cir. 2007)).

### A.    The Tax on Corbin's Longevity Date During Her First Maternity Leave

Corbin alleged that Southwest violated § 4311 by taxing her longevity date while she was

on her first maternity leave, moving the date from July 10, 2004 to February 14, 2005. (Docket Entry No. 23 at 2). Corbin testified in her deposition that Southwest did not tax the longevity date of a civilian pilot, Heather Hulen, who took maternity leave at around the same time. (Docket Entry No. 31 Ex. 2, 98:2-7).

Corbin does not identify summary judgment evidence supporting the inference that her military service status was a substantial or motivating factor for the challenged action. Southwest submitted evidence that it restored the longevity dates moved for Corbin's second maternity leave under the recent Collective Bargaining Agreement Side Letter 3, as it did for other female pilots, both military and civilian. (Docket Entry No. 31, Ex. 17, Sparks Decl., at ¶ 11).

Taxation on maternity leaves taken before 2006 are not covered by Side Letter 3. Southwest was not required to restore the longevity credits in Corbin's first maternity leave. Corbin spoke to at least five female pilots working with Southwest, but she can name only one civilian pilot, whose pre-2004 maternity leave was not taxed. (Docket Entry No. 31 Ex. 2, at 106–23). Southwest's witness provided a sworn declaration with business records showing that Southwest taxed the longevity dates for five female pilots, all civilian, who took maternity leaves in 2004. (Docket Entry No. 31, Ex. 17, Sparks Decl., at ¶ 7). The record indicates that the taxation for Hulen's maternity leave was significantly less than for the other civilian female pilots, suggesting that the computation for Hulen was due to a processing error. (*Id.*). Corbin did not identify evidence controverting this witness's testimony or the record. Nor did she identify other evidence to support her claim of disparate treatment based on her military status.

Corbin argues that Southwest adopted a policy of allowing every chief pilot to use "considerable discretion" to "reward a loyal civilian pilot while punishing a disloyal military pilot."

(Docket Entry No. 32 at 23). Corbin also argues that Southwest's compliance with the collective-bargaining agreement does not shield it from liability under USERRA. (*Id*.). But Corbin neither cites a case nor identifies record evidence to support her arguments. Giving discretion to lower level supervisors is not enough to show discrimination. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355–57 (2011) (policy giving discretion to supervisors can be a basis of discrimination only if discriminatory use of the discretion is shown). The alleged discrimination is based on Corbin's subjective belief and speculation, which are not sufficient to preclude summary judgment. *See Carder*, 2014 WL 1356094, at *3. A reasonable jury would not find that Corbin's military status was a substantial or motivating factor for Southwest's decision to tax Corbin's longevity date during her first maternity leave.

## B.     The Retaliation Claims

Corbin alleges retaliation under § 4311(b), based on the counseling session that she was summoned to after she talked to another veteran pilot about his USERRA rights. (Docket Entry No. 23 at 14–15). An employer may not discriminate or take an adverse action against any person for enforcing a right under USERRA. 38 U.S.C. § 4311(b). A plaintiff may establish retaliation by demonstrating that her protected actions were a motivating factor for the employer's adverse action. § 4311(c)(2). The employer may rebut the claim by showing that it would make the same employment decision in the absence of the employee's protected actions. *Bennett*, 936 F. Supp. 2d at 788; 38 U.S.C. § 4311(c).

Corbin testified that on January 4, 2014, after her flight from Houston to Dallas, she refused to take an extra leg, citing fatigue. (Docket Entry No. 31, Ex. 1 at 197:12-14). The next day, she was summoned to meet with assistant chief pilot Carasco. (*Id*.). Carasco began the meeting with

questions about Corbin's family and health and about the reasons for her fatigue call the night before. (*Id.* at 196:25–197:5). Carasco pointed to records showing that Corbin had tried to give away her initially assigned Houston–Dallas flight on January 4 and asked her if she had made the fatigue call for the additional leg because she simply did not want to fly that night. Corbin testified that Carasco brought up her conversation with another pilot, in which she advised him that Southwest did not mind "dropped flights," and asked Corbin if she was teaching others how to "work the system." (*Id.* at 197:12-14.). Corbin was not disciplined or reprimanded for either action. (*Id.* at 198:12–199:3).

This evidence is not enough to allow a reasonable jury to find that Corbin's military service was a "substantial or motivating factor" for an adverse employment action. The evidence shows that the meeting focused on Corbin's refusal to comply with the flight assignment and on whether Corbin properly exercised her right to make the fatigue call. Corbin admitted that Carasco never made any comment on her military service or veteran status. (*Id.* at 199:13-21). To the extent that Carasco addressed Corbin's conversation with the other military pilot, Carasco warned Corbin not to teach other employees to use fatigue as an excuse to avoid flight assignments. Corbin did not identify admissible evidence showing that Southwest does not hold counseling sessions for civilian pilots who are suspected of making improper fatigue excuses. "USERRA affords certain protections to service members, but it 'does not exempt those in the military from complying with the usual rules of behavior in the workplace or being subject to the usual discipline.'" *Pickett v. Panola Cty., Miss.*, No. 3:13-cv-95-DMB-SAA, 2015 WL 416967, at *4 (N.D. Miss. Jan. 30, 2015) (citing *Bradberry*, 732 F.3d at 545). Corbin admitted that Southwest did not terminate her employment, reduce her salary, or deny her a promotion. (*Id.* at 198:12-23). She also admitted that it was merely

her personal opinion that Carasco held the meeting to "harass and intimidate" her because of her military status. (*Id.* at 200:4-17). This subjective inference, without more, is not enough to survive summary judgment. *Carder*, 2014 WL 1356094, at *3. Southwest's summary judgment motion on the retaliation claim is granted.

### C.     The Hostile-Work-Environment Claim

Corbin contends that Southwest violated USERRA by creating a hostile work environment. (Docket Entries No. 23 at 11–12, No. 32). She alleges that the SWAPA's poll suggested that military pilots working for Southwest felt that they were harassed and discriminated against because of their participation in the military. Corbin claims that before she took her military leave in March 2007, she routinely heard Southwest urging military pilots to put the company's interest ahead of their military commitments. (Docket Entry No. 23 at 3, 14).

In *Carder v. Cont'l Airlines, Inc.,* 636 F.3d 172, 179 (5th Cir. 2011), the Fifth Circuit held that Congress did not intend to create a hostile-work-environment cause of action under USERRA. The Fifth Circuit reasoned that § 4303(2) did not include "terms, conditions, or privileges of employment" in its definition of "benefit of employment." *Id.* at 177–79. Congress amended the definition of "benefit of employment" to expressly include "the terms, conditions, or privileges of employment," 38 U.S.C. § 4303(2), but the Fifth Circuit has not examined the issue since then, and a district court has declined to do so. *Bennett*, 936 F. Supp. 2d at 789. Some district courts from other circuits have recognized hostile-work-environment claims under USERRA after the amendment. *E.g.*, *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981 (C.D. Cal. 2013); *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-cv-06500, 2014 WL 4269126, at *7 (N.D. Ill. Aug. 28, 2014).

As in *Bennett*, the court does not need to resolve this issue here. Even if USERRA provided a hostile-work-environment cause of action, Corbin does not identify evidence raising genuine factual disputes material to finding a hostile work environment. At a minimum, harassment and hostile-work-environment claims require the plaintiff to point to sufficient record evidence that would enable a reasonable jury to find "a causal link between the challenged actions of the employer and the adversely affected 'term, condition, or privilege of employment.'" *Bennett*, 936 F. Supp. 2d at 789 (adopting the standards under the American Disabilities Act, 42 U.S.C. § 12112, for USERRA hostile-work-environment claims). "The Supreme Court has 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment' establishing a hostile work environment." *McDaniel*, No. 13-cv-06500, at *7 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Courts consider the following factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651–52 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F. 3d 264, 268 (5th Cir. 2002)). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (citing *Faragher*, 524 U.S. at 787).

Corbin's SWAPA poll of Southwest military pilots, (Docket Entries No. 32 Ex. 8), as discussed above, is not properly authenticated and is inadmissible. Corbin alleges that she routinely hear[d] phrases such as "You work for Southwest now!"; "Southwest is your primary job, the Air Force Reserve is secondary!"; "You don't want to drop many trips, work for the Reserve on your

days off!" (Docket Entry No. 23 at 3). These statements are not sufficient to allow a reasonable jury to infer the necessary affect on the terms and conditions of Corbin's employment. *Hernandez*, 670 F.3d at 652; *Bennett*, 936 F. Supp. 2d at 789; *McDaniel*, No. 13-cv-06500, at *7. Corbin did not identify record evidence showing threats or humiliation because of her military service. Her assertion that Southwest has been hostile to military pilots is broad, general, and conclusory. *See Hernandez*, 670 F.3d at 651–52 (granting summary judgment when the plaintiff pointed to only a few incidents of workplace harassment).

Corbin contends that the meeting Carasco asked her to attend after she refused to fly the extra flight from Dallas to Amarillo was "a deliberate and willful attempt to intimidate" her because she had "educated" another veteran pilot about his USERRA rights during the first flight from Houston to Dallas. (Docket Entry No. 32 at 26). The only admissible evidence that Corbin pointed to in support this claim is her own deposition testimony about the meeting. She testified that Carasco "accused her" of teaching another pilot about how to "work the system." (Docket Entry No. 31, Ex. 1 at 197:12-14). The meeting and the statement do not, however, support an inference of a hostile work environment. Corbin does not allege or identify evidence that the meeting affected her employment. She was not reprimanded or disciplined for either talking to another pilot or refusing to fly the additional leg assigned. (*Id*. at 198:12-23). A fear of termination is not enough. *See Carmen v. S.F. Unif. Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief [stated in her deposition] that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

Corbin does not raise a genuine factual dispute material to determining whether Southwest

created a hostile working environment or harassed Corbin based on her military status, or that the actions she alleges changed her employment terms, benefits, or conditions. The court grants Southwest's motion for summary judgment on Corbin's § 4311 and § 4303 claims.

### D. Corbin's Claim for Discrimination in the Denial of Her Reemployment Requests

Section 4312 of USERRA provides that an employee "whose absence from a position of employment is necessitated by reason of service in the uniformed services" is entitled to reemployment rights and benefits if he "reports to" his employer "in accordance with the provisions of subsection (e)." 38 U.S.C. § 4312(a); *Hernandez v. Results Staffing, Inc.*, 677 F. App'x 902, 905 (5th Cir. 2017). Corbin alleges that after she injured her back in May 2007, she made multiple requests to Kass for reemployment with Southwest in a nonflying position. She argues that Southwest denied her reemployment right in violation of USERRA. Corbin's complaint alleges that: (1) Southwest violated her reemployment rights by failing to provide proper reemployment accommodation under 38 U.S.C. §§ 4312–13; and (2) Southwest's denial of her reemployment request was discriminatory, violating 38 U.S.C. § 4311. (Docket Entry No. 23 at 12).

Southwest moved for summary judgment, arguing that it did reemploy Corbin in the same position that she held before her military service, and that the § 4311 antidiscrimination provision is applicable only after Corbin was reemployed following her military service. Because Corbin alleged a wrongful denial of reemployment during her ongoing military service, Southwest contends that its action does not fall under § 4311. (Docket Entry No. 31 at 22).[3]

The Fifth Circuit has recognized that the denial of reemployment can be a basis for a § 4311

---

[3] Southwest's summary judgment motion does not address Corbin's claims under USERRA § 4312 and § 4313. Instead, the motion is about whether the alleged denial of reemployment accommodation violated antidiscrimination provision, § 4311. (Docket Entry No. 31 at 22).

35

discrimination claim.  *Rogers*, 392 F.3d at 762; *Bradberry*, 732 F.3d at 547 (quoting KATHRYN PISCITELLI & EDWARD STILL, THE USERRA MANUAL § 7:5).  "Denials of reemployment are within the purview of § 4311's bans on discrimination and retaliation are not limited to reemployment sought after returning from military service."  USERRA MANUAL § 7.5; *see Davison v. Dep't of Veterans Affairs*, 115 M.S.P.R. 640, 644–47 (M.S.P.B. 2011) (disabled veteran's claim for employer's delay in restoring his employment after he exercised the statutory right to take unpaid medical leave was within the scope of § 4311(a)).  To prevail on a § 4311 claim, the plaintiff must show that the employer denied her reemployment for a discriminatory or retaliatory reason.  The motivating-factor test applies.  *Id*.; 38 U.S.C. § 4311(c).

Corbin does not raise a genuine factual dispute material to determining whether her military service was a "motivating factor" for Southwest's decision to not provide her a temporary reemployment accommodation by giving her a nonflying administrative assignment after her back injury.[4]  Corbin's allegations that she heard Southwest personnel stating to her and other military pilots that "You work for Southwest now!" is not sufficient to preclude summary judgment. *Ekhlassi v. Nat'l Lloyds Ins. Co.*, 295 F. Supp. 3d 750, 753 (S.D. Tex. 2018); *Bailey*, 663 F. App'x at 331 ("When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.").

Corbin testified that Kass refused to put her temporarily at a nonflying position.  (Docket Entry No. 31, Ex. 1 at 151–60).  She does not point to summary evidence that Southwest allowed similarly situated non-military pilots to transfer to nonflying positions.  Neither does she point to evidence showing that Southwest had a suitable vacancy at that time.

---

[4]  Corbin took medical leave until she was cleared to return to work.

Corbin's evidence, at most, shows that Southwest knew that she had hurt her back while on military leave. The issue is whether Southwest denied her request for a nonflying position *because of* her military leave of absence. Knowingly denying a veteran's request for temporary accommodation, without more, is not sufficient under § 4311. *Bradberry*, 732 F.3d at 547 ("Section 4311's protection against discrimination and retaliation should not be confused with the right to reemployment under § 4312.... [A] discriminatory or retaliatory motive must be shown to establish a violation of § 4311."). Corbin does not point to competent summary judgment evidence that would allow a reasonable factfinder to find that Southwest denied Corbin a nonflying position because of animus toward her military status or services. *Bradberry*, 732 F.3d at 544–45.

Southwest's motion for summary judgment on this issue is granted.

## VI. Corbin's Other Claims

Southwest moves for summary judgment on Corbin's claims for: (1) credits on her longevity date for vacation days during her first maternity leave; (2) accrual of vacation and sick leave while on her military leave in 2007; (3) interest on the payments made to restore her second maternity leave, as required by Side Letter 3; and (4) the income for the 401K contributions that she would have earned while she was on short-term military leaves. (Docket Entry No. 31 at 29). Southwest argues that the court does not have jurisdiction to hear these claims because Corbin did not first exhaust the administrative remedies provided by the Railway Labor Act, 45 U.S.C. §§ 155, 156.

Addressing the relationship between USERRA and the Railway Labor Act, the Fifth Circuit held that a federal court lacks jurisdiction to hear disputes between an airline pilot and his employer that "arise from the interpretation of the [Collective Bargaining Agreement]." *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x. 293, 299 (5th Cir. 2014). Common disputes covered by a collective-bargaining agreement include rates of pay, working conditions, and vacation and sick leaves. *Id.* (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994)). The Railway Labor Act

does not bar litigating claims that have an independent basis under federal law, even if the claims are relevant to the collective-bargaining agreement. *See Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008) ("[F]or the federal courts to have subject matter jurisdiction over [USERRA claims] does not require that the [collective-bargaining agreement] be irrelevant to the dispute; either party may still use the [collective-bargaining agreement] to support the credibility of its claims."). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the [collective-bargaining agreement] must inhere in the nature of the plaintiff's claim." *Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 864 (9th Cir. 2014) (quotation omitted). When the parties do not dispute how to interpret a collective-bargaining agreement, federal courts have jurisdiction to hear claims arising from the employer's allegedly discriminatory practices. *Carmona*, 536 F.3d at 349.

Corbin relies on USERRA's antidiscrimination provision in arguing that Southwest improperly failed to credit her longevity date on her first maternity leave. 38 U.S.C. § 4311. Corbin fails to point to evidence that raises factual disputes material to deciding whether Southwest treated her differently than nonmilitary pilots taking maternity leave, or that provides a basis for a reasonable factfinder to find that Southwest refused to restore all of Corbin's longevity credits because of discrimination against her military status. *Bradberry*, 732 F.3d at 544–45.

Corbin's claims for vacation and sick-leave benefits for her 2007 military leave and her claim for 401K contributions earned during her short-term military leaves are based on USERRA, § 4312 and § 4318. The parties dispute whether USERRA requires an employer to provide temporary reemployment accommodation for an employee who was injured during military service. The parties did not disagree on the interpretation of the collective-bargaining agreement. The court has jurisdiction to hear these claims and denies Southwest's motion for summary judgment on them.

Finally, Corbin asks for interest on payments made to restore the longevity lost because of her second maternity leave. This claim is based only on the collective-bargaining agreement, Side

Letter 3. Corbin does not allege an independent USERRA basis for this claim, which means that the court lacks jurisdiction to decide it. Southwest's motion for summary judgment is granted on this issue.

### VII. Conclusion

Southwest's motion to strike or exclude evidence is granted as to Exhibits 1, 4, 5, 8, 10, 13, 19, and 20, and denied as to Exhibits 3, 6, 14, 15–18. The motion for summary judgment is granted in part and denied in part. The following claims remain: (1) Southwest's laches defense; (2) Corbin's claim for denial of reemployment during her back-injury treatment in 2007; and (3) Corbin's claims for employment and pension benefits during her leave for her back injury in 2007.

SIGNED on October 4, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge