IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY CORBIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-17-2813 |
| | § | |
| SOUTHWEST AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION SETTING OUT
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Ms. Tracy Corbin sued Southwest Airlines, Inc. in September 2017, asserting discrimination, retaliation, and reemployment-denial claims under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 *et seq*. (Docket Entry No. 1). Ms. Corbin, a Southwest pilot and former Air Force Reserve officer, alleges that Southwest failed to promptly reemploy her after she injured her back on military leave in April 2007. Ms. Corbin alleges that in May or June 2007, she made four requests to Southwest for reemployment in a nonflying position while she recovered, but that Southwest denied those requests. In January 2008, Ms. Corbin was medically cleared to fly as a pilot.

Ms. Corbin alleges that she should have been reemployed in a temporary nonflying position for roughly the last five or six months of 2007. Southwest argues that Ms. Corbin did not ask for reemployment until December 2007, and then in a flying position. Southwest argues that because Ms. Corbin waited over 10 years to file suit after she allegedly made the requests for temporary reemployment in a nonflying position, the court should bar her claims under laches.

Laches is an equitable affirmative defense that requires the defendant to show that: the plaintiff unreasonably delayed bringing a claim; the delay was inexcusable; and the delay

materially prejudiced the defendant. *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 900 (5th Cir. 2016). In October 2018, the court granted summary judgment to Southwest on Ms. Corbin's discrimination and retaliation claims. (Docket Entry No. 44 at 34–37). The court also found that Ms. Corbin unreasonably delayed bringing this lawsuit for over 10 years after her claims accrued, and that the delay was inexcusable. (*Id.* at 24–25). On August 6, 2019, with the parties' agreement, the court held a bench trial on whether Ms. Corbin's delay materially prejudiced Southwest's ability to present a defense. (Docket Entry No. 105).

Based on a careful review of the pleadings, record, applicable law, and the arguments of counsel, the court finds and concludes that Ms. Corbin's delay in bringing this lawsuit materially prejudiced Southwest's ability to defend against her claims. The court also finds and concludes the delay also materially prejudiced Southwest by inflating Ms. Corbin's damages. Laches bars Ms. Corbin's remaining claims and, as a result, her complaint is dismissed, with prejudice. Final judgment is separately entered. The reasons are set out below.

**I.  Background**

The parties agree on the following facts. Ms. Corbin has worked as a pilot for Southwest since July 2002. (Docket Entry No. 53 at 2, 5). She is based in Houston and still works for Southwest. Ms. Corbin was also an Air Force Reserve officer from 2002 until 2012, when she left the military with an honorable discharge. Ms. Corbin's Reserve duty required her to occasionally take leave from Southwest to complete her military service obligations at Columbus Air Force Base in Mississippi.

On March 26, 2007, Ms. Corbin went on military leave for Reserve duty. (*Id.* at 9). Around April 1, 2007, Ms. Corbin injured her back while serving with her Reserve unit. (*Id.*). In May 2007, neurosurgeons diagnosed Ms. Corbin as 100% disabled and instructed her to remain "off

work" until July 17, 2007. (*Id.*). From June 11 to June 21, 2007, Ms. Corbin reported to her military unit at Columbus Air Force Base, and she was paid by the military. (*Id.* at 10). On July 18, 2007, Ms. Corbin had back surgery. (*Id.*). In December 2007, Ms. Corbin's neurosurgeon gave her a return-to-work note authorizing her to fly on January 1, 2008. (*Id.*). On January 4, 2008, Ms. Corbin returned to Southwest's active pilot roster. (*Id.*).

## II. Findings of Fact

This case turns on whether, in May or June 2007, Ms. Corbin asked Southwest for temporary reemployment in a nonflying position. Ms. Corbin alleges that she made four oral requests for reemployment to Mr. William Kass, her Southwest supervisor. Ms. Corbin alleges that she asked only Mr. Kass for reemployment, and that the requests were made over the phone and not in writing. (*Id.*; Docket Entry No. 23 at 4).

Mr. Kass testified by video deposition on June 7, 2019. (Docket Entry No. 96-1 at 1). In 2007, Mr. Kass was Southwest's chief pilot in Houston. (*Id.* at 3). He supervised over 800 Southwest pilots and was responsible for "their care and wellbeing." (*Id.*). Mr. Kass addressed pilot needs and "issue[s] with their flying abilities." (*Id.*). Pilots would call Mr. Kass to take sick leave, military leave, or vacation days. Mr. Kass's office would then create a "pull sheet," an internal document listing the reason why the pilot could not fly. (*Id.*). Southwest would change the pilot schedule based on the pull-sheet entry. (*Id.*). Three assistant chief pilots and three executive assistants worked for Mr. Kass by taking pilot calls and filling out pull sheets. (*Id.* at 7). The pull sheets do not, however, reflect or include requests for temporary reemployment to a nonflying position.

Mr. Kass testified that in 2011, he suffered a traumatic brain injury in a car accident, resulting in short- and long-term memory loss. (*Id.* at 2). The car accident had a greater impact

3

on Mr. Kass's short-term memory, but his long-term memory "has [also] been affected." (*Id.*). In addition to having difficulty recalling information, Mr. Kass has experienced dizziness, loss of balance, and depression because of the accident, which prevented him from traveling to testify. (*Id.*). Mr. Kass worked as a contract negotiator for Southwest until 2016, when he went on long-term medical leave. (*Id.* at 3). He is currently on a long-term medical leave from the company and is not expected to return to work. (*Id.* at 2–3).

Mr. Kass testified that he does not recall Ms. Corbin asking him for reemployment in a nonflying position in May or June 2017. (*See id.* at 3). He could not say whether Ms. Corbin had or had not made the requests, instead testifying that his injury and the passage of 12 years made him unable to recall whether he talked to Ms. Corbin at all between April 2007 and December 2007. (*See id.* at 6).

On cross-examination, Ms. Corbin's counsel asked Mr. Kass hypothetical questions about whether, in 2007, he would have remembered a pilot calling him. Mr. Kass testified that it would be difficult to remember any particular request after 12 years: "I really—it's hard—I challenge anybody in this room to remember conversations they had . . . 12 years ago." (*Id.*). Mr. Kass testified that he supervised over 800 pilots. (*Id.*). But Mr. Kass also testified that a request submitted by a pilot injured in military Reserve or other duty for temporary reemployment in a nonflying position would be unusual, and that he did not recall ever "fac[ing] that situation." (*Id.* at 7). That raises a plausible inference that if Ms. Corbin had made the requests she alleges, Mr. Kass would have recalled the requests because they were unusual—but for the passage of time and the effects of his brain injury. Instead, Mr. Kass could only say he did not recall if she had made the requests, rather than recalling that she had not done so. (*Id.* at 6).

4

Mr. Kass was a credible witness. He repeatedly testified that he could not remember whether Ms. Corbin had asked him for reemployment in a nonflying position in May or June 2007, but that he could not remember any pilot making a similar request. It is hardly surprising that Mr. Kass is unable to remember details of phone conversations that allegedly occurred 12 years ago. In addition to the passage of time, Mr. Kass supervised 800 pilots. And the traumatic brain injury he sustained four years after the incident has affected his long-term and short-term memory.

Southwest called three other witnesses who worked for Mr. Kass in 2007 to testify about whether Ms. Corbin had asked for reemployment in a nonflying position in May or June 2007. These witnesses, Mr. Michael Zajchowski, a former senior payroll manager, Ms. Pilar Perez, an executive assistant, and Mr. Larry Thomas, a former assistant chief pilot, could not recall Ms. Corbin making such a request. Southwest also submitted the 2007 pull sheets with entries about Ms. Corbin.

This evidence—the pull sheets and the testimony of Mr. Zajchowski, Ms. Perez, and Mr. Thomas—has limited value, however, because Ms. Corbin alleges that she asked only Mr. Kass for reemployment in May or June 2007. The parties agree that even if she made the requests, the pull sheets would not contain an entry showing those requests. This means that only Mr. Kass's testimony bears on the events at issue.

The court finds that Mr. Kass could not recall whether Ms. Corbin asked for reemployment in a nonflying position in May or June 2007 because his memory has faded due to the passage of time, and because he suffered a traumatic brain injury that resulted in long-term memory loss. *See Maher v. City of Chicago*, 547 F.3d 817, 822–83 (7th Cir. 2008); *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734–35 (7th Cir. 2003); *E.E.O.C. v. Alioto Fish Co., Ltd.*, 623 F.2d 86, 89 (9th Cir. 1980). Neither the other witnesses nor the documents can replace his testimony as a way for

5

Southwest to defend. Mr. Zajchowski, Mr. Thomas, and Ms. Perez all credibly testified that they still work for Southwest, were in Mr. Kass's office in 2007, and made entries in the pull sheets on Ms. Corbin, but none of that bears on whether, in May or June 2007, she requested reemployment in a nonflying position.

### III. Analysis of Findings of Fact and Conclusions of Law

"Laches is an affirmative defense barring suit when a plaintiff's inexcusable delay in bringing a cause of action has prejudiced the defendant." *Retractable Techs.*, 842 F.3d at 889–90; *see also* FED. R. CIV. P. 8(c). The defense is based "on the notion that equity aids the vigilant and not those who slumber on their rights." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 708 (5th Cir. 1994) (quoting *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985)). Laches has three elements: "(1) a delay [in] asserting a right or claim; (2) that the delay was inexcusable; [and] (3) that undue prejudice resulted from the delay." *Retractable Techs.*, 842 F.3d at 900 (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)). Because the court found that Ms. Corbin inexcusably delayed in bringing this lawsuit, the only question is whether the delay unduly prejudiced Southwest.[1] (Docket Entry No. 44 at 24–25, 39).

"Undue prejudice may be 'either economic (e.g., loss of monetary investments, incurring damages that might otherwise have been avoided by an earlier suit) or evidentiary, i.e, preventing the defendant from presenting a full and fair defense on the merits (e.g., loss of records, death of

---

[1] The court's "ruling on laches is reviewed for abuse of discretion, and the factual findings of delay, inexcusability, and prejudice that underlie it are reviewed for clear error." *Thomas v. Bryant*, 919 F.3d 298, 311–12 (5th Cir. 2019); *see Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) ("[L]aches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation."); *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 281 n.66 (5th Cir. 2019) ("[A]n equitable defense—even to a legal claim—is tried to the court.").

a witness, deteriorating memories of past events).'" *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 712 (W.D. Tex. 2013) (quoting *Altech Controls Corp. v. EIL Instruments, Inc.*, 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998)); *see Baylor Univ. Med. Ctr. v. Heckler*, 758 F.2d 1052, 1058 (5th Cir. 1985) ("Laches contemplates harm resulting from delay; prejudice does not arise 'merely because one loses what otherwise he would have kept.'" (quoting *In re Bohart*, 743 F.2d 313, 327 (5th Cir. 1984)).

Southwest argues that it was unduly prejudiced by Ms. Corbin's delay in filing suit. According to Southwest, because Ms. Corbin agrees that she allegedly asked only Mr. Kass for reemployment in a nonflying position, Mr. Kass is the only witness Southwest could call to rebut Ms. Corbin's allegations. Mr. Kass, however, cannot recall whether Ms. Corbin asked for reemployment. Southwest argues that Mr. Kass's memory has faded not only because of the ten-year delay in filing suit, but also because Mr. Kass suffered a traumatic brain injury in 2011, four years after Ms. Corbin's alleged request.

Ms. Corbin responds that Southwest has not been unduly prejudiced, because neither Ms. Corbin's delay in bringing this lawsuit nor his traumatic brain injury had any "effect on [Mr. Kass's] ability to remember a single phone call . . . in May or June 2007." Ms. Corbin contends that Mr. Kass would not "have remembered a single phone call from a single pilot," even after only a short period, because, in 2007, Mr. Kass supervised over 800 pilots and addressed several personnel issues each day.

The court disagrees. Ms. Corbin's argument is based on the flawed premise that her delay was irrelevant, because Mr. Kass would have forgotten whether she had asked for reemployment within a year of the request, if not earlier. Mr. Kass, however, repeatedly testified that he could not recall the circumstances of Ms. Corbin's 2007 leave of absence because of the passage of time

7

and his injury. Each day Ms. Corbin waited to sue made it less likely Mr. Kass could recall the relevant events. Contrary to Ms. Corbin's argument, Mr. Kass did not testify that he would not have remembered any pilot's requests because he received so many. Instead, because a pilot asking for reemployment in a nonflying position after a military injury was so unusual, the plausible inference is that he was more likely to recall it than a routine request, but for the passage of time. And the 2011 accident impaired Mr. Kass's memory, making it less likely that he could recall requests made in 2007, no matter how unusual.

Ms. Corbin also contends that Southwest was not prejudiced because the company's records relating to Ms. Corbin's 2007 leave of absence are complete. The parties agree that the pull sheets Southwest relies on would not contain an entry documenting whether her alleged requests, whether she made them as alleged or not. According to Ms. Corbin, a July 9, 2007, letter that Mr. Kass signed proves that she asked for reemployment in a nonflying position. The letter states that:

> Tracy Corbin is a full time employee for Southwest Airlines. Currently she is on unpaid medical leave and is not receiving compensation. Our policy is not to allow our Pilots to return to active status until they are cleared by their Physicians for full work duty without any restrictions.

(Docket Entry No. 32-2). This does not bear on any request for a nonflying position, but only on her status as an active-duty pilot.

Southwest argues that because the records fail to show whether or not Ms. Corbin asked for reemployment, that amplifies the importance of Mr. Kass to its defense, because his testimony is the only evidence that the company could have presented to rebut Ms. Corbin's evidence, and he cannot recall.

*National Association of Government Employees v. City Public Service Board of San Antonio*, 40 F.3d 698 (5th Cir. 1994), is instructive. The plaintiffs sued the City of San Antonio,

8

asserting national-origin discrimination claims under Title VII arising from events that occurred 12 years earlier. *Id.* at 702–03. The district court referred the case to a magistrate judge, who found on summary judgment that, of "the foremen and supervisors responsible for hiring and promotion during the period [at issue], nine had died, three were too ill to testify, and three had been terminated by [the City]." *Id.* at 710. The magistrate judge also found that 36 "other foremen and supervisors who prepared performance evaluations during the relevant period" could remember few, if any, details about the plaintiffs. *Id.* at 710–11. Concluding that the City was prejudiced by the loss of witness testimony, the magistrate judge recommended applying laches to bar the plaintiff's Title VII claims. *Id.* at 704, 710. The district court adopted the magistrate judge's recommendation, and the plaintiff's appealed. *Id.* at 716.

The Fifth Circuit affirmed. *Id.* at 711. The court rejected the plaintiffs' argument "that the loss of witness testimony [was] irrelevant because records that allegedly demonstrate the pattern and practice of discrimination [by the City were] still available." *Id.* at 711. The court reasoned that these records "only help[ed the] plaintiffs in proving a *prima facie* case of discrimination; they d[id] nothing to alleviate the prejudice to [the City] in attempting to articulate legitimate, nondiscriminatory reasons to rebut any inference of discrimination these records might raise." *Id.*

Ms. Corbin admits that she allegedly asked only Mr. Kass for reemployment. Neither the pull sheets relating to her 2007 leave of absence nor the July 9, 2007, letter would contain an entry that she made the requests. These facts show that Southwest would have to rely on Mr. Kass's testimony to rebut Ms. Corbin's claims. But he cannot recall whether Ms. Corbin asked for reemployment because of her ten-year delay in filing suit and his brain injury, severely limiting Southwest's ability to present a defense. *See id*; *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publ'g Co.*, 839 F.2d 1147, 1154 (6th Cir. 1988).

Ms. Corbin's argument about her longevity date lacks merit. The parties agree that in February 2017, Southwest increased Ms. Corbin's longevity date, a seniority benchmark the company uses to determine an employee's rate of pay, to cover her 2007 leave of absence. Ms. Corbin argued briefly that the adjustment is an implicit admission that she asked for reemployment in May or June 2007 and, as a result, laches should not apply. Southwest responded that Ms. Corbin's longevity date relates to her 2007 leave of absence, but it does not show whether she made the reemployment requests as alleged. Ms. Corbin did not reply, conceding that her longevity date adjustment was not based on the alleged request.

Lastly, Southwest persuasively argues that, in addition to evidentiary prejudice, Ms. Corbin's delay significantly increased her damages. The parties agree that approximately half of Ms. Corbin's demand—about $145,000—consists of prejudgment interest and tax gross ups, costs "that might otherwise have been avoided by an earlier suit." *Bennett*, 939 F. Supp. 2d at 712. Ms. Corbin's actual damages could have also been reduced by an earlier suit, further showing why laches should be applied to this case. *Smith*, 338 F.3d at 735.

**IV. Conclusions of Law**

The court enters the following conclusions of law:

- Ms. Corbin unreasonably delayed in bringing this lawsuit. *Brown v. Bridges*, 692 F. App'x 215, 216 (5th Cir. 2017).

- The delay was inexcusable. *Save Our Wetlands, Inc. v. U.S. Army Corps of Eng'rs*, 549 F.2d 1021, 1027–28 (5th Cir. 1977).

- The delay materially prejudiced Southwest by "caus[ing] a disadvantage in asserting and establishing a claimed right or defense." *Bohart*, 743 F.2d at 327; and

- The delay materially prejudiced Southwest by increasing Ms. Corbin's damages. *Smith*, 338 F.3d at 735.

"Essentially the equitable substitute for a statute of limitations, laches serves to protect defendants from prejudice caused by stale evidence, prolonged uncertainty about legal rights and status, and unlimited exposure to liability damages." *Id.* at 733. This case implicates each of these concerns.

Ms. Corbin's claims are barred by laches and, the court dismisses her complaint, with prejudice. Final judgment is separately entered.

SIGNED on August 9, 2019, at Houston, Texas.

                                              Lee H. Rosenthal
                                  Chief United States District Judge